AIR LIQUIDE AMERICA CORP., et al., Plaintiffs,

v.

U.S. ARMY CORPS OF ENGINEERS, et al., Defendants.

No. CIV.A.H–98–3982.

United States District Court, S.D. Texas, Houston Division.

Jan. 25, 2002.

Osborne J. Dykes, III, Fulbright & Jaworski, Houston, TX, for Plaintiff.

Samuel G. Longoria, William Brad Howard, Houston, TX, Fred R. Disheroon, Washington, DC, Lavon L Jones, Beaumont, TX, for Defendant.

Opinion on Summary Judgment

HUGHES, District Judge.

1. *Introduction.*

The Houston Ship Channel is to be widened and deepened, requiring the relocation of pipelines that pass under it. The owners of the pipelines have been told to move their pipelines at their own expense. The Port of Houston Authority is required by federal and Texas law to pay for the relocation.

2. *Background.*

The Water Resources Development Act of 1996 authorized expansion of the Houston–Galveston Navigational Channel. The

project is to be completed substantially in accordance with the report of the chief engineer of the United States Army Corps of Engineers. The report placed the expense of pipeline removal solely on the pipeline owners; the act says that the removal is to be accomplished at non-federal expense.

The plaintiffs have licenses to run pipelines under the channel. More than 65 pipelines cross beneath the channel, and they must be lowered to complete the project. The average cost of relocation is about one million dollars per pipeline. The pipeline owners agreed in paragraph five of each license to remove or relocate the pipeline at its own cost if the pipeline interferes with the deepening or widening of the channel. At the Port's request, the Corps told the owners to remove the pipelines at their own expense. The owners want the Port to pay for the removals under the general cost allocation plan of the Water Resources Development Act of 1986.

Both sides have moved for summary judgment. The plaintiffs assert that (a) the Corps's notices to remove are void, (b) the Port required the removal under the Texas Water Code, and (c) the Port has taken property without compensation. The Corps challenges the court's jurisdiction to hear the case. The Port claims that the 1996 act assigns the costs to the pipeline owners and that the owners have agreed to remove the pipelines at their own expense.

### 3. *The 1996 Act.*

The Water Resources Development Act of 1996 authorized the expansion of the ship channel. The act permits a project to be carried out "in accordance with the plans, and subject to the conditions" of the report of the chief of engineers. Public Law No. 104–303, 110 Stat. 3662. The chief's report was not attached to the public law and was not introduced in or debated in Congress, much less adopted by both houses and presented to the president. The act itself—the law—requires that pipeline removal in the Houston–Galveston channel be completed at "non-Federal expense." 110 Stat. 3666. The pipeline owners and the Port are the only two bodies involved in the expansion besides the national government. The statute does not specify a division of costs among the non-federal interests; the chief's report assigns the relocation costs to the owners.

### 4. *The 1986 Act and the Texas Water Code.*

The Water Resources Development Act of 1986 requires the non-federal interest to relocate or assure the relocation of pipelines as necessary to carry out a project. If the project is a deep-draft harbor, half the cost is paid by the non-federal interest and half by the pipeline owners; no division of costs is specified for projects other than deep-draft ones. 33 U.S.C. § 2211(a)(4). By law, the non-federal interest in this case is the Port of Houston. 33 U.S.C. § 2241(7), 42 U.S.C. § 1962d–5b(b).

If the Port requires the relocations, it does not matter whether it removes the pipelines itself or merely assures that it is done; the Texas Water Code obliges the Port to pay for the relocations at its sole expense. TEX. WATER CODE § 60.102.

### 5. *Jurisdiction.*

#### A. *Federal Court Jurisdiction.*

The Corps asserts that this court lacks jurisdiction; the case should be heard in the Court of Federal Claims because, though their artful pleading hides the claim, the owners implicitly request compensation in excess of $10,000 for pipeline removal. The complaint reveals no artifice. The Corps is not being sued for

money damages; the only claims against it are for declaratory relief. This court has jurisdiction.

### B. *Standing.*

■ The Corps claims that the owners do not have standing to sue because their interests are not protected by the 1986 act. The statute, it argues, is meant to set guidelines for the submission of Corps reports, not assign payment obligations. This is incorrect. The 1986 act may be entirely procedural; all laws, from the Constitution down, regulate government processes to some extent. These procedures, however, are in place to protect the interests of citizens and set standards for assigning obligations. The plaintiffs' pipelines cross under the channel. They have been told to move them, which takes planning and money. The Corps cannot issue notices requiring the owners to pay for relocation and then claim that the statute specifying who pays for relocation does not protect the owners' interests. The owners have a personal stake in the process dictated by the act and have standing to sue.

### C. *Final Agency Action.*

■ The Corps argues that the notices are not final agency action because they do not specify a consequence for noncompliance. Agency action is final if it imposes an obligation. *See United States Dep't of Justice v. Federal Labor Relations Auth.,* 727 F.2d 481, 493 (5th Cir.1984). The notices to remove require the owners to relocate the pipelines. The implied consequence is seizure of the pipelines through revocation of the licenses to cross the channel. The obligation is immediate and direct because the relocation must be completed by a date certain and the owners must move the pipelines. The removal letters are final agency action.

### D. *Ripeness.*

■ The plaintiffs argue that the notices are invalid because of their depth requirement. The Corps argues that the notices have only a general depth and that the claim will not be ripe for review until it issues permits with a specific depth. The plaintiffs' basic contention, however, is that the notice letters themselves are not valid; it has nothing to do with new permits. The pipelines must be moved to some lower depth. The particular depth ultimately chosen does not matter. The notices require removal of the pipelines; the validity of those notices is clearly ripe for review.

### 6. *Deep–Draft Harbor.*

The amount paid by the owners and the Port depends on whether the project is a deep-draft harbor. A deep-draft harbor is constructed to a depth of more than 45 feet. 33 U.S.C. § 2241(1). The entrance to the expanded Houston Ship Channel will be 47 feet deep and 800 feet wide. The channel itself is described as 45 feet deep by 530 feet wide. It needs to be dredged to a depth of more than 45 feet for maintenance.

■ The depth of the entrance is not the depth of the channel. There must necessarily be a transition from the sea floor to the channel bottom; this length is a trivial portion of the entire project. No pipelines cross the entrance. The critical depth is the channel's design depth. When it adopted the chief's report, Congress authorized the construction of a 45–foot–deep harbor, not a deep-draft harbor. Silt accumulates and is dredged; the actual depth of the harbor will vary with the maintenance cycle. No matter how deep the channel must occasionally be dredged to maintain a specific depth, Congress approved a harbor with an official depth of 45 feet; it did not endorse a deep-draft

harbor and then require that harbor to be listed as 45 feet deep.

### 7. Payment.

Neither the 1996 nor 1986 acts of Congress explicitly allocate the costs of relocating the pipelines, but Texas law—the same authority that created the Port—says the Port must pay if it requires the removal. TEX. WATER CODE § 60.102. The Port has required the removal by (a) initiating and financing the project, (b) signing a project cooperation agreement with the Corps, and (c) requesting removal notices from the Corps. The argument that the Port has not "required" the relocation of the pipelines is unsound. The Corps issued the removal notices at the Port's request, acting as the Port's agent in requiring the owners to relocate the pipelines. The Port cannot escape its obligation to pay by shunting its order through an agent.

The defendants argue that the chief's report states that the pipelines will pay for removal, and Congress adopted this recommendation when it mandated in the 1996 act that the project take place in substantial accordance with the chief's report and that pipeline relocation would occur at non-federal expense. This is not correct. Congress authorized the project and design described in the report, not every sentence between the report's covers. The adoption of the chief's report went only as far as its engineering and design recommendations, not its admonishments on cost allocation. The prohibition on federal payment for relocation expenses is not an implicit embrace of the report's payment recommendations; it is a warrant that, though the Port must perform the removal or assure it is performed, the federal government is not going to pay for it.

Congress intended the cost-sharing scheme of the 1986 act to remain in effect; that scheme, after looking to the Texas Water Code, requires the Port to pay for the relocation.

### 8. Contractual Agreement.

The Port argues that the owners agreed in paragraph five of the licenses to pay for the removal of the pipelines at the Port's request. The licenses are preempted by the Texas Water Code. The statute was passed to limit the power of bodies like the Port to extract payment or performance from groups that contract with them. The Port, as a creature of the state, is bound by the regulations the state places on it. This includes the requirement that the Port pay for any relocation that it requires of a pipeline owner.

### 9. Conclusion.

This court has jurisdiction to hear the suit against the Corps. The Houston Ship Channel project authorized by the Water Resources Development Act of 1996 will not create a deep-draft harbor. The Port has required the removal of the pipelines. The cost-sharing plan created by the Water Resources Development Act of 1986, combined with Texas Water Code, requires the Port to pay for the pipeline relocation. The 1996 act does not require the pipeline owners to pay for the relocation of their pipelines, and the licenses' payment provisions are preempted by the Texas Water Code.

The plaintiffs' motion for summary judgment will be granted in part; the defendants' motions for summary judgment will be denied. The notice letters from the Corps will be amended to require the Port to pay for the pipeline removals. The remaining claims will be dismissed as moot.